IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JAN 0 5 2007

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| DIANA ALCALA and<br>RICHARD RODRIGUEZ<br><br>v.<br><br>CARDINAL HEALTH, INC.;<br>CARDINAL HEALTH DISTRIBUTION,<br>INC.; CARDINAL HEALTH 109, INC.;<br>BABATUNDE OYEDIRAN; and<br>MARIBEL ALFARO | §<br>§<br>§<br>§   CIVIL ACTION NO. B-06-177<br>§<br>§<br>§<br>§<br>§<br>§ |

## OPINION & ORDER

BE IT REMEMBERED that on January 5, 2007, the Court considered Defendants' Notice of Removal, Dkt. No. 1, Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B) [sic], Dkt. No. 4, Plaintiffs' Motion to Remand, Dkt. No. 6, Plaintiffs' Response to Defendants' Motion to Dismiss, Dkt. No. 7, Defendants' Response in Opposition to Plaintiffs' Motion to Remand, Dkt. No. 8, Defendants' Reply in Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B) [sic], Dkt. No. 9, and the Request for Entry of Orders on Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B) [sic], Dkt. No. 10.

## I. Background

This case began on February 28, 2005. *See* Dkt. No. 6, at 2; Dkt. No. 1, at 6. On that day, Alyssa Renee Rodriguez ("Alyssa"), a two-year-old child, was admitted to Valley Baptist Medical Center, to be treated for lead poisoning. *See* Dkt. No. 1, at 6; Dkt. No. 4, at 2; Dkt. No. 6, at 2; Dkt. No. 6, Ex. A, at 1, 2. At the hospital, the doctors determined that Alyssa should be treated with edetate calcium disodium. *See* Dkt. No. 6, at 2; Dkt. No. 6, Ex. A, at 2; Dkt. No. 6, Ex. B, at 5. Thus, a prescription for such treatment was written for her. *See* Dkt. No. 6, at 2; Dkt. No. 6, Ex. A, at 1.

The prescription for Alyssa was filled at the in-hospital pharmacy, which was

operated by Defendant Cardinal Health 109, Inc. ("Cardinal Health 109").  *See* Dkt. No. 1, at 6; Dkt. No. 4, at 2; Dkt. No. 6, at 2–3.  More specifically, the prescription was filled by Defendant Oyediran, a pharmacist at the hospital, and/or Defendant Alfaro, a pharmacist technician working under Oyediran's supervision.  *See* Dkt. No. 4, at 2; Dkt. No. 6, at 3.  To fill the prescription, the prescribed drug, edetate calcium disodium, was mixed with other substances so that it could be administered intravenously.  Dkt. No. 6, at 3; Dkt. No. 6, Ex. A, at 1, 2.

Alyssa's first treatment of edetate calcium disodium was administered over an approximately four hour period on February 28, 2005.  Dkt. No. 6, at 3; Dkt. No. 6, Ex. A, at 2.  Administration of a second treatment to Alyssa was begun early the next morning, on March 1, 2005.  Dkt. No. 6, at 3; Dkt. No. 6, Ex. A, at 2.  The second treatment, however, was apparently prepared improperly, as it contained edetate disodium instead of edetate calcium disodium.  Dkt. No. 6, at 3; Dkt. No. 6, Ex. A, at 1, 2; Dkt. No. 6, Ex. B, at 5.  Alyssa died at approximately 7:30 a.m. on March 1, 2005.  Dkt. No. 6, Ex. A, at 2.

Plaintiffs initiated legal proceedings related to Alyssa's death on July 21, 2005, by applying for an Application for Declaration of Heirship and Letters of Independent Administration in Cameron County Court at Law No. One ("County Court").  Dkt. No. 6, at 5.  Diana Alcala, plaintiff herein, was appointed Independent Administratrix of Alyssa's estate on August 9, 2005.  *Id.*

Plaintiffs and Defendant Cardinal Health 109 engaged in settlement negotiations in early 2006.  *See* Dkt. No. 1, Ex. C3, C4 (B–G); Dkt. No. 6, Ex. C2–C12.  It appears from the record that Cardinal Health 109 made a settlement offer on March 2, 2006, which Plaintiffs accepted.  *See* Dkt. No. 1, Ex. C4 (D, E, F); Dkt. No. 6, at 5; Dkt. No. 6, Ex. C2–C5.  However, since that time, the parties have disagreed as to the exact terms of the settlement and as to whether a settlement agreement was ever actually reached.  *See* Dkt. No. 1, Ex. C4 (F, G); Dkt. No. 6, at 5; Dkt. No. 6, Ex. C8–C12.

On June 29, 2006, Plaintiffs[1] filed suit, again in County Court, against Cardinal Health 109, Joseph Oladunni, and Alfaro. *See* Dkt. No. 1, Ex. H, at 1; Dkt. No. 4, at 4; Dkt. No. 6, at 6; Dkt. No. 6, Ex. G, at 1. Plaintiffs alleged breach of the settlement agreement and sought a declaratory judgment regarding the terms of the settlement agreement. *See* Dkt. No. 1, Ex. H, at 1–2; Dkt. No. 4, at 4; Dkt. No. 6, at 6. In July, Plaintiffs dismissed the claims against Defendant Oladunni and added claims against Defendant Oyediran. *See* Dkt. No. 1, Ex. H, at 2; Dkt. No. 4, at 4; Dkt. No. 6, Ex. G, at 1. Plaintiffs subsequently amended their petition several more times, "asserting both tort claims and contract claims for enforcement of an alleged settlement agreement against Defendants Cardinal Health 109, Inc., Babatunde Oyediran, and Maribel Alfaro." Dkt. No. 6, Ex. G, at 1.

Plaintiffs[2] filed a second suit, involving the same matters and similar claims, on September 28, 2006. *See* Dkt. No. 1, Ex. C1; Dkt. No. 1, Ex. H, at 4. This suit was filed in the 404th Judicial District Court of Cameron County, Texas ("District Court"). *See* Dkt. No. 1, Ex. C1; Dkt. No. 1, Ex. H, at 4. Plaintiffs again asserted claims against Defendants Cardinal Health 109, Oyediran, and Alfaro, and they added claims against Cardinal Health, Inc. and Cardinal Health Distribution, Inc. *See* Dkt. No. 1, Ex. C1; Dkt. No. 1, Ex. H, at 4. In the suit, Plaintiffs asserted causes of action for survival and wrongful death against the Defendants. They averred that the Defendants were strictly liable for Alyssa's death and claimed that the Defendants acted with gross negligence in caring for her. *See* Dkt. No. 1, Ex. C1, at 14–20.

---

[1]In the County Court action, Plaintiff Alcala filed suit in both her individual capacity and in her capacity as independent administratrix of Alyssa's estate. *See* Dkt. No. 1, Ex. H1; Dkt. No. 6, Ex. G, at 1. In the action *sub judice*, Plaintiff Alcala is only bringing claims in her individual capacity. *See* Dkt. No. 1, Ex. C3. For purposes of this opinion, the Court will only specify which capacity it is referring to if the capacity makes a substantive difference to the analysis.

[2]As of the Original Petition in District Court, Plaintiff Alcala was asserting claims on behalf of herself, individually, and in her capacity as independent administratrix of Alyssa's estate. Dkt. No. 1, Ex. C1. Plaintiff Alcala ceased asserting claims in her capacity as independent administratrix in Plaintiffs' Second Amended Original Petition, filed on October 17, 2006. Dkt. No. 1, Ex. C3.

The next day, September 29, 2006, Plaintiffs non-suited their survival claim in County Court.  *See* Dkt. No. 1, Ex. H, at 4; Dkt. No. 6, Ex. G, at 2.

On October 3, 2006, Defendants Cardinal Health 109, Oyediran, and Alfaro filed their First Amended Answer and Counterclaims in County Court.  *See* Dkt. No. 1, Ex. H3; Dkt. No. 6, Ex. G, at 2.  In their counterclaims, Defendants set forth causes of action for breach of the settlement agreement and declaratory judgment, and they sought enforcement of the settlement agreement.  *See* Dkt. No. 1, Ex. H3; Dkt. No. 6, Ex. G, at 2.  Defendants contended that the settlement agreement resolved all of the claims related to Alyssa's death.  *See* Dkt. No. 1, Ex. H3; Dkt. No. 6, Ex. G, at 2.

On October 9, 2006, Defendants filed a Motion for Summary Judgment in County Court, seeking enforcement of the settlement agreement and resolution of all pending claims and counterclaims.  *See* Dkt. No. 6, Ex. G, at 2.  The next day, October 10, 2006, Plaintiffs non-suited the remainder of their claims in County Court.  *Id.*; Dkt. No. 1, Ex. H4, at 22.  Also on October 10, Plaintiffs filed their First Amended Original Petition in District Court, adding claims for breach of contract and declaratory judgment.  *See* Dkt. No. 1, Ex. C2.  Plaintiffs further added claims for strict liability and gross negligence in the District Court case on October 17, 2006, when they filed their Second Amended Original Petition.  *See* Dkt. No. 1, Ex. C3.

On October 18, 2006, Plaintiffs filed a Motion to Dismiss for Lack of Jurisdiction in County Court, arguing that the County Court did not have continuing jurisdiction over the pending counterclaims.  *See* Dkt. No. 6, Exs. D, E.  Plaintiffs also filed a similar motion in District Court, on October 19, 2006, seeking an order from the District Court transferring the counterclaims from County Court to District Court.  Dkt. No. 1, Ex. C4.

Defendant Alfaro filed her answer to the District Court petition on October 20, 2006, and Defendant Oyediran filed his answer on October 26, 2006.  Dkt. No. 1, Exs. C6, C7.  Defendant Cardinal Health 109 also filed its answer on October 26, 2006.  Dkt. No. 1, Ex. C5.  Defendants Cardinal Health, Inc. and Cardinal Health Distribution, Inc. did not file answers in District Court prior to the removal of the case to this Court. Furthermore, each of the three defendants who filed answers in District Court included a plea in abatement in their answer.  Dkt. No. 1, Ex. C5, at 9; Dkt. No. 1, Ex. C6, at 9;

-4-

Dkt. No. 1, Ex. C7, at 9.

The Defendants collectively removed the case to this Court on October 27, 2006, alleging improper joinder of Defendants Cardinal Health 109, Oyediran, and Alfaro. Dkt. No. 1. Defendants then proceeded to file a Motion to Dismiss in this Court, on November 3, 2006. Dkt. No. 4.

In her capacity as independent administratrix of Alyssa's estate, Diana Alcala filed her Report of Closing Independent Administration in County Court on November 7, 2006. *See* Dkt. No. 6, Ex. E.

On November 14, 2006, the County Court heard the Motion for Summary Judgment that was still pending. *See* Dkt. No. 1, Ex. F, at 1. The County Court entered its decision and its final judgment on November 15, 2006, partially granting the Motion for Summary Judgment. *See* Dkt. No. 1, Exs. F, G. In its judgment, the court held that a valid settlement agreement existed between Plaintiffs and Defendants Cardinal Health 109, Oyediran, and Alfaro, because Defendant Cardinal Health 109, "on behalf of its affiliates, employees, and agents" had entered into a binding agreement with the Plaintiffs. *See* Dkt. No. 1, Ex. G, at 2–3. It found that in exchange for monetary payment of $1,527,500 by Cardinal Health 109, Plaintiffs agreed to a "complete release of all claims arising from or related to the death of Miss Alyssa Renee Rodriguez." *Id.* at 3. Therefore, the County Court ordered Cardinal Health 109 to pay the agreed upon amount to Plaintiffs within 30 days of its judgment. *Id.*

On November 21, 2006, Plaintiffs filed a Motion to Remand in this Court. Dkt. No. 6. The next day, Plaintiffs filed their Response to Defendants' Motion to Dismiss, also in this Court. Dkt. No. 7. The Court must now determine whether or not federal subject matter jurisdiction exists over this case.

## II.     Standard

Jurisdiction for removing an action originally brought in state court to federal court is authorized by 28 U.S.C. § 1441. This section permits a defendant to remove a civil case "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441 (2005). The burden of showing that federal jurisdiction exists is on the

party seeking removal.  *See* Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988).

Federal subject-matter jurisdiction is asserted in this case under 28 U.S.C. § 1332 — diversity jurisdiction.  For diversity jurisdiction to exist, the case must involve citizens of different states and a matter which exceeds $75,000 in value, exclusive of interest and costs.  28 U.S.C. § 1332.  For diversity purposes, a corporation is deemed to be a citizen of its state of incorporation and the state in which it maintains its principal place of business.  *Id.* at § 1332(c)(1).  This diversity of citizenship must be complete — meaning that the citizenship of every plaintiff must be diverse from the citizenship of every defendant.  *See* Whalen v. Carter, 954 F.2d 1087, 1094 (5th Cir. 1992) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); Mas v. Perry, 489 F.2d 1396, 1398–99 (5th Cir. 1974)).

Additionally, before a federal court can exercise jurisdiction over an action originally brought in state court, the Defendant must comply with removal procedures. These procedures are governed by 28 U.S.C. § 1446(b), which states:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding has then been filed in court and is not required to be served on the defendant, whichever period is shorter. If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Therefore, Defendants, as the removing parties, bear the burden of establishing that federal subject matter jurisdiction exists and that they have complied with the time limitations of § 1446(b).

## III.    Analysis

Defendants removed this case pursuant to diversity jurisdiction under 28 U.S.C. § 1332.  Defendants must therefore establish that federal subject matter jurisdiction

exists by showing that (1) the amount in controversy is at least $75,000; (2) complete diversity exists between the parties; and (3) they have satisfied all of the procedures for removal. *See* 28 U.S.C. §§ 1332, 1446.

The Court finds that the first and third elements required for removal are not subject to dispute. The first element clearly exists in this case, as the claims involve a settlement agreement for $1,527,500. *See* Dkt. No. 1, Ex. C3, at 16–17, 25–28. The Court also finds that the Defendants complied with all of the necessary procedures for removal. *See* Dkt. No. 1, Ex. C1; Dkt. No. 1, at 14–15. Therefore, the Court will consider only the second element: the requirement of complete diversity.

To establish complete diversity, Defendants must show that the citizenship of each Defendant is diverse from the citizenship of each Plaintiff. *See Whalen*, 954 F.2d at 1094. Furthermore, no Defendant may be a resident of the forum state — in this case Texas — for removal to federal court to be proper. 28 U.S.C. § 1441(b).

In this case, three of the five Defendants are citizens of Texas: Cardinal Health 109, Inc., Oyediran, and Alfaro ("In-State Defendants"). Dkt. No. 1, at 4–5. Only Cardinal Health, Inc. and Cardinal Health Distributions, Inc. are not citizens of Texas. *Id.* at 4. Because no Defendant may be a citizen of the forum State, the presence of the In-State Defendants in this action destroys removal jurisdiction based on diversity. Recognizing this defect, Cardinal Health, Inc. and Cardinal Health Distribution, Inc. contend that the In-State Defendants were improperly joined. *Id.* at 4–14. Therefore, according to these Defendants, the citizenship of the In-State Defendants should not be considered in determining whether the Court has subject matter jurisdiction. If the In-State Defendants were improperly joined, their citizenship is irrelevant and removal jurisdiction exists in this case.

There are two methods to establish improper joinder:[3] "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *See* Smallwood v. Ill. Cent. R.R.

---

[3]Although there is no substantive difference, the Fifth Circuit has recently adopted the term "improper joinder" instead of "fraudulent joinder." Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 571 n.1 (5th Cir. 2004).

Co., 385 F.3d 568, 573 (5ᵗʰ Cir. 2004) (quotation omitted); Travis v. Irby, 326 F.3d 644, 647 (5ᵗʰ Cir. 2003) (citing Griggs v. State Farm Lloyds, 181 F.3d 694, 698 (5ᵗʰ Cir. 1999)). In this case, although Defendants state that "both grounds for improper joinder exist in this action," they fail to make any allegations showing that Plaintiffs committed fraud in the pleading of jurisdictional facts. Dkt. No. 1, at 5. Therefore, the Court will only consider the second test.

Although a number of different standards have been articulated for determining whether a defendant has been improperly joined under the second test, the Fifth Circuit has adopted this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

*Smallwood*, 385 F.3d at 573. To survive the improper joinder test, a possibility of recovery must be reasonable and not merely theoretical. *Id.* at 573 n.9 (quoting Badon v. RJR Nabisco, Inc., 236 F.3d 282, 286 n.4 (5ᵗʰ Cir. 2000)); Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5ᵗʰ Cir. 2002) (same). To predict whether a possibility of recovery exists, the court must determine if the petition states a claim under state law against the in-state defendant, by conducting "a Rule 12(b)(6)-type analysis." *Smallwood*, 385 F.3d at 573. If the petition survives this challenge, then ordinarily the joinder is proper.[4] *Id.* It is a heavy burden that the removing party carries when attempting to prove improper joinder. *See id.* at 574; *Great Plains Trust Co.*, 313 F.3d at 312.

In the case *sub judice*, the Defendants proffer several possible bases for finding that the In-State Defendants were improperly joined. Defendants first contend that the non-diverse Defendants are identical to the defendants in the County Court case and therefore may not be sued in a second case. Dkt. No. 1, at 6–7, 11–12. Next,

---

[4] A court may also enter into a summary inquiry by "pierc[ing] the pleadings." *Smallwood*, 385 F.3d at 573–74.

Defendants aver that a valid settlement agreement exists between the parties and that the settlement agreement bars Plaintiffs' claims. *Id.* at 8–11. Third, Defendants state that Plaintiffs are prohibited from bringing their claims because Texas has imposed a cap on damages in health care liability cases, Defendants have already settled with Plaintiffs for the maximum amount possible under the cap, and the one satisfaction rule prevents Plaintiffs from seeking additional damages against any of the Defendants. *Id.* at 12–13. Finally, Defendants aver that the In-State Defendants are not proper subjects of Plaintiffs' products liability claims, because they are not sellers or manufacturers of the drugs at issue. *Id.* at 13–14. Each of these possible bases will be addressed in turn.

### A. Jurisdiction in the County Court

Defendants first contend that the In-State Defendants were improperly joined because of the pendency of the County Court case. *Id.* at 6–7, 11–12. Defendants assert that the County Court retained jurisdiction over the case despite Plaintiffs' non-suit of their claims, and that the District Court case must be dismissed upon the filing of pleas in abatement by the Defendants. *Id.* at 11–12.

The Court finds that the County Court lacked subject matter jurisdiction over the claims pending before it, and, therefore, that the pendency of the County Court case could not deprive the state District Court of jurisdiction over the In-State Defendants.

The primary causes of action at issue in both the County Court case and the state District Court case are actions for breach of the settlement agreement and declaratory judgment. *See* Dkt. No. 1, Exs. C3, H1. The claims underlying these actions are for survival and wrongful death. *Id.* Thus, for the County Court to have jurisdiction over either the Plaintiffs' claims or the Defendants' counterclaims, it must have jurisdiction over wrongful death and survival causes of action.

There are four statutes in the Texas Code which could possibly grant the County Court jurisdiction over survival or wrongful death actions. These are the enabling statute for Cameron County's courts at law, the Texas Declaratory Judgment Act, the Wrongful Death and Survival statutes, and the Probate Code. *See* TEX. CIV. PRAC. &

REM. CODE ANN. §§ 37.002–37.005, 71.001–71.012, 71.021–71.022 (Vernon 2006);
TEX. GOV'T CODE ANN. §§ 25.0331–25.0332 (Vernon 2006); TEX. PROB. CODE ANN. §§
5, 5A (Vernon 2006).  If none of these statutes grants jurisdiction to the County Court
over survival or wrongful death actions, then that court cannot exercise jurisdiction over
this case.

 Neither the Texas Declaratory Judgment Act nor the Wrongful Death or Survival
statutes contain jurisdictional grants.  *See* TEX. CIV. PRAC. & REM. CODE §§
37.002–37.005, 71.001–71.012, 71.021–71.022.  These statutes do not expand the
jurisdiction of any court.  Rather, these statutes merely state that declaratory judgments
may be brought in any court that is acting "within its jurisdiction," that an action for
wrongful death exists in Texas, and that personal injury actions do not abate upon the
death of the injured party.  *Id*. §§ 37.003, 71.002, 71.021.  None of these provisions
establishes subject matter jurisdiction over this case in the County Court.

 The enabling statute for Cameron County Court at Law No. 1 is § 25.0331 of the
Texas Government Code.  Under § 25.0332, the County Court has "jurisdiction over all
causes and proceedings, civil and criminal, original and appellate, prescribed by law for
county courts," "concurrent with the county court, the probate jurisdiction provided by
general law for county courts," and "concurrent jurisdiction with the district court in civil
cases in which the amount in controversy exceeds $500 but does not exceed $1 million,
excluding interest."  TEX. GOV'T CODE §§ 25.0003, 25.0332.  The settlement agreement
in this case is for $1,527,500 — more than $1 million.  *See* Dkt. No. 6, Ex. C2–C5.
Thus, the amount in controversy exceeds the County Court's jurisdiction, leaving only
probate jurisdiction as a possible basis for finding that the County Court had subject
matter jurisdiction.

 Under the Probate Code, Cameron County Court-at-Law No. 1 is a court with
original probate jurisdiction, but it is *not* a statutory probate court.  TEX. PROB. CODE §§
3(e), 3(ii); TEX. GOV'T CODE § 25.0331.  Thus, the County Court has "the power to hear
all matters incident to an estate."  TEX. PROB. CODE § 5(f).  As applied to county courts
at law, "incident to an estate"

 "include[s] the probate of wills, the issuance of letters testamentary and of

administration, the determination of heirship, and also include[s], but [is]
not limited to, all claims by or against an estate, all actions for trial of title
to land incident to an estate and for the enforcement of liens thereon
incident to an estate, all actions for trial of the right of property incident to
an estate, and actions to construe wills, and generally all matters relating
to the settlement, partition, and distribution of estates of deceased
persons."

TEX. PROB. CODE § 5A(a).  Therefore, the County Court had jurisdiction over this case
only if survival and/or wrongful death actions are "matters incident to an estate" under
this definition.

In 1984, the Texas Supreme Court considered the question of whether the
definition above encompassed actions for wrongful death and survival.  In *Seay v. Hall*,
the court was presented with the question of "whether statutory probate courts have
jurisdiction over survival and wrongful death actions."  Seay v. Hall, 677 S.W.2d 19, 20
(Tex. 1984), *superseded by statute*, Acts 1985, 69th Leg., R.S. ch. 875, § 1, eff. Aug.
26, 1985, *as recognized in* Palmer v. Coble Wall Trust Co., 851 S.W.2d 178, 181–82
(Tex. 1992).  Although the case *sub judice* concerns the jurisdiction of a specific county
court at law, the definition of the terms "appertaining to estates and incident to an
estate" in the context of a statutory probate court at the time of the *Seay* decision, was,
for all relevant purposes, identical to the current definition of "incident to an estate" in
the context of constitutional county courts and county courts-at-law.[5]  *Compare* TEX.
PROB. CODE ANN. § 5A(b) (Vernon 1980), *with* TEX. PROB. CODE ANN. § 5A(a) (Vernon
2006).  In its holding, the Texas Supreme Court "conclude[d] that neither wrongful
death nor survival actions are, or were intended to be, matters appertaining to or
incident to estates."  *Seay*, 677 S.W.2d at 23.  The court continued, stating that "[i]t
cannot be argued seriously that the legislature intended to confer upon county courts at
law dominant jurisdiction over wrongful death and survival causes of action."  *Id*. at 24.
According to the *Seay* case then, it is clear that survival and wrongful death actions do

---

[5]The sole difference between the definition for statutory probate courts then and
county courts at law today relates to trusts, a concept which is not at issue in this case.
*Compare* TEX. PROB. CODE ANN. § 5A(b) (Vernon 1980), *with* TEX. PROB. CODE ANN. §
5A(a) (Vernon 2006).

not fall within the applicable definition of "incident to an estate."

Nonetheless, that case does not provide a dispositive answer to the question of the County Court's jurisdiction, because it was legislatively overturned the next year. *See* Acts 1985, 69th Leg., R.S. ch. 875, § 1, eff. Aug. 26, 1985.  In fact, the 69th Texas state legislature specifically addressed the Texas Supreme Court's decision in *Seay*. H.B. 479, 69th Leg., R.S. (1985).  In its analysis of the amendments to § 5A(b) of the Probate Code, the legislature specifically disapproved of the court's holding.  *Id*. Furthermore, although the legislature occasionally referred to "probate courts" in its analysis, as a whole the analysis reflects the legislature's intent to modify only the jurisdiction of the *statutory* probate courts.  *Id*.  In addition, the legislature only modified the language of the definition of "incident to an estate" which applied to statutory probate courts, and the amendment stated that "[i]n actions by or against a personal representative, the *statutory probate courts* have concurrent jurisdiction with the district courts."  Acts 1985, 69th Leg., R.S. ch. 875, § 1, eff. Aug. 26, 1985 (emphasis added). Thus, it is clear that the legislature intended to alter the Texas Supreme Court's decision with regard to statutory probate courts, but the legislature made no changes regarding the jurisdiction of constitutional county courts or county courts at law.

Unfortunately, the fact that the legislature did not address the jurisdiction of county courts at all, the fact that the reference to county courts at law in the *Seay* case was dicta, and not a holding of the court, and the legislature's interchangeable use of the term "probate court" with the more specific term "statutory probate court" coalesced to form a jurisprudence of mass confusion regarding the jurisdiction of all Texas probate courts.  *See* 17 GERRY W. BEYER, TEXAS PRACTICE SERIES *Probate and Decedents' Estates* 13–14 (Supp. 2006).

The legislature addressed the problem, and attempted to correct it, in 1989.  In the 71st Texas state legislature, Probate Code sections 5 and 5A were once again amended.  1989 TEX. SESS. LAW SERV. 1035 (West).  First, the following language was added as a new subsection in section 5: "A statutory probate court has concurrent jurisdiction with the district court in all actions by or against a person in the person's capacity as a personal representative, in all actions involving an inter vivos trust, in all

-12-

actions involving a charitable trust, and in all actions involving a testamentary trust." *Id.* Second, three new subsections were added to section 5A: "(c) A statutory probate court has concurrent jurisdiction with the district court in all actions: (1) by or against a person in the person's capacity as a personal representative; (2) involving an inter vivos trust; (3) involving a charitable trust; and (4) involving a testamentary trust;" "(d) A statutory probate court may exercise the pendent and ancillary jurisdiction necessary to promote judicial efficiency and economy;" and "(e) Subsections (c) and (d) apply whether or not the matter is appertaining to or incident to an estate." *Id.*  In this manner, the legislature attempted to resolve the confusion, not only by clarifying the scope of jurisdiction in the statutory probate courts, but also by being repetitive about that scope.

The inclusion of subsection (e), however, led to additional confusion.  In *Palmer v. Coble Wall Trust Company, Inc.*, the Texas Supreme Court once again "addresse[d] the scope of a statutory probate court's jurisdiction under § 5A(b) of the Texas Probate Code." 851 S.W.2d 178, 179 (Tex. 1992).  In that case, the court "confirm[ed] [its] reasoning in *Seay* that a suit 'is appertaining to or incident to' an estate when the controlling issue is the settlement, partition, or distribution of an estate insofar as it does not apply to suits by or against a personal representative." *Id.* at 182.  In addition, the court once again used the terms "probate court" and "statutory probate court" interchangeably. *Id.* at 181–82.

Moreover, the matter became further confused in *Green v. Watson*, when the Austin Division of the Texas Court of Appeals compared sections 5A(a) and 5A(b).  860 S.W.2d 238, 243–44 (Tex. App. 1993).  The Court discussed the two definitions for the phrase "incident to an estate:"

> Section 5A(a) defines the term for constitutional and statutory county courts while section 5A(b) defines the term for statutory probate courts and district courts.  The definitions found in sections 5A(a) and 5A(b) are nearly identical, except that statutory probate courts and district courts, unlike county courts, are expressly empowered to impose the equitable remedy of a constructive trust.

*Id.*  This analysis is not transferable to contexts outside the specific facts of that case, however.  First, the question before the appellate court related to whether or not a

county court at law could impose a constructive trust. *Id.* at 240.  Therefore, there was no need for the court in *Green* to consider any differences between sections 5A(a) and 5A(b) outside the context of trusts.  Second, at the relevant time, section 5A(b) included the following language: "All statutory probate courts may, in the exercise of their jurisdiction, notwithstanding any other provisions of this Code, hear all suits, actions, and applications filed against or on behalf of any heirship proceeding or decedent's estate, including estates administered by an independent executor."  TEX. PROB. CODE ANN. § 5A(b) (Vernon 1992).  This language was not included in section 5A(a).  *Id.* § 5A(a).  Furthermore, under the language of the then-applicable version of section 5, statutory probate courts had "concurrent jurisdiction with the district court in all actions by or against a person in the person's capacity as a personal representative . . . ."  *Id.* § 5.  Thus, it is clear that sections 5A(a) and 5A(b) were not identical, and that the jurisdiction granted to statutory probate courts was not identical to the jurisdiction granted to county courts.

Since the 1989 amendments to the Probate Code, the legislature has attempted to clarify the jurisdictional issues on at least four occasions, in 1993, 1997, 1999, and 2003.  *See* 2003 TEX. SESS. LAW SERV. Ch. 1060 (West); 1999 TEX. SESS. LAW SERV. Ch. 64 (West); 1997 TEX. SESS. LAW SERV. Ch. 1302 (West); 1993 TEX. SESS. LAW SERV. Ch. 957 (West).  All of these changes were intended to clarify the already existing law, however.  In none of these alterations did the Texas legislature make any substantive modifications to the jurisdiction of the county, district, or statutory probate courts.

Despite these legislative efforts, confusion has persisted.  *See* 17 GERRY W. BEYER, TEXAS PRACTICE SERIES *Probate and Decedents' Estates* 13–14, 29–36 (Supp. 2006).  Even the Texas Supreme Court continued its interchangeable use of the terms "probate court" and "statutory probate court" in a 2005 opinion.  *See* Gonzalez v. Reliant Energy, Inc., 159 S.W.3d 615, 620 (Tex. 2005).

Regardless of the confusion surrounding the terminology in the Texas Probate Code, this Court finds the jurisdictional grant accorded to constitutional county courts and county courts at law has not been altered by the Texas legislature since before

-14-

1985. *See* TEX. PROB. CODE §§ 5, 5A; 17 GERRY W. BEYER, TEXAS PRACTICE SERIES *Probate and Decedents' Estates* 33 (Supp. 2006) ("However such amendments do not apply to the constitutional county courts and the county courts at law."). Thus, although the Texas legislature clearly overturned the *Seay* case in relation to statutory probate courts, the dicta concerning county courts at law is still persuasive. Therefore, it appears that county courts at law do not have jurisdiction over survival and wrongful death claims.

There is Texas case law which points to the opposite conclusion, however. In *Tovias v. Wildwood Properties Partnership*, 67 S.W.3d 527 (Tex. App. 2002), the Houston Division of the Texas Court of Appeals stated: "The Cameron County Court at Law No. 2 is a statutory county court having probate jurisdiction. Consequently, that court also had subject matter jurisdiction over the wrongful death lawsuit filed there." *Id.* at 529 (internal citations omitted). For our purposes here, Cameron County Court at Law No. 2 has jurisdiction which is equivalent to the jurisdiction of Cameron County Court at Law No. 1. *See* TEX. GOV'T CODE §§ 25.0331, 25.0332, 25.0006, 25.0008. Thus, according to the Houston appellate court, Cameron County Court at Law No. 1 has jurisdiction over survival and wrongful death actions in this case.

However, upon consideration of the applicable statutes, case law, and legislative history, this Court concludes that Cameron County Court at Law No. 1 does *not* have jurisdiction over survival and wrongful death actions. In making its determination of whether or not the County Court has jurisdiction, this Court must predict how the Texas Supreme Court would decide the same issue. West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940); 32 AM. JUR. 2D *Federal Courts* § 466 (2006); 36 C.J.S. *Federal Courts* § 203 (2006). Although the Houston appellate court, when faced with the same question, squarely held that the Cameron County Courts do have subject matter jurisdiction, this Court finds that the court provides little precedential value for that aspect of its opinion. *Tovias*, 67 S.W.3d at 529. First, the main questions in that case related to dominant jurisdiction, the effect of a plea in abatement, and the jurisdiction of the Harris County district court, not to the jurisdiction of the Cameron County Court at Law. *Id.* at 528. Second, the court's analysis of the issue of the county court's subject

-15-

matter jurisdiction is almost non-existent. *Id.* at 529. The court failed to discuss either the *Seay* case or the legislative intent, and it also did not consider the differences in jurisdiction between the statutory probate courts and the statutory county courts at law. *Id.* Thus, this Court is not persuaded that the Texas Supreme Court would reach the same conclusion as the appellate court.

Furthermore, the Court can find no basis for predicting that the Texas Supreme Court would reach a conclusion that differs from its dicta in *Seay*. Although the Texas legislature specifically responded to *Seay* by changing the jurisdictional grant to statutory probate courts in 1985, the legislature has not changed the subject matter jurisdiction of county courts at any time in the 22 years since *Seay* was decided. *See* TEX. PROB. CODE §§ 5, 5A; 17 GERRY W. BEYER, TEXAS PRACTICE SERIES *Probate and Decedents' Estates* 33 (Supp. 2006). This Court can only presume that the legislature agreed with the Texas Supreme Court's statement that "[i]t cannot be argued seriously that the legislature intended to confer upon county courts at law dominant jurisdiction over wrongful death and survival causes of action," and that it has intentionally refrained from altering the language of § 5A(a). *Seay*, 677 S.W.2d at 24. In any event, it is apparent that the continuity in the language of § 5A(a), in comparison to the multitude of amendments to § 5A(b), displays a tacit approval by the Texas legislature of the Texas Supreme Court's interpretation of that language.

Finally, the specificity with which the Texas legislature has prescribed the subject matter jurisdiction of the various probate courts in Texas supports this Court's conclusion. The legislature specifically defined the terms "probate court" and "statutory probate court," and these terms do not have the same meaning. TEX. PROB. CODE §§ 3(e), 3(ii). In fact, "[a] county court at law exercising probate jurisdiction is not a statutory probate court," although it is a "probate court." *Id.* In addition, the Texas legislature has individually considered each of Texas' 254 counties and created specific county courts and/or statutory probate courts to meet the county's needs, and it has provided each court with particularized jurisdiction. *See* TEX. GOV'T CODE §§ 25.0041–25.2570. For example, Harris County has four county civil courts at law, fifteen county criminal courts at law, and four statutory probate courts, *id.* § 25.1031;

-16-

Williamson County has four county courts at law, each of which "has concurrent jurisdiction with the district court in family law cases and proceedings," *id.* §§ 25.2481, 25.2482(a); Bexar County has twelve county courts at law and two statutory probate courts, and County Courts at Law Nos. 1, 4, 6, 10, 11, and 12 have certain types of cases to which they must "give preference," *id.* §§ 25.0171, 25.0172(a), 25.0172(b), 25.0172(c); Gregg County has two "statutory county court[s]," each of which "has, concurrent with the district court, the jurisdiction provided by the constitution and general law for district courts, except that the county court at law does not have jurisdiction in capital felony cases," *id.* §§25.0941, 25.0942; El Paso County has seven county courts at law, two county criminal courts at law, and two statutory probate courts, and the county courts at law have "the jurisdiction provided by the constitution and by general law for district courts," *id.* §§ 25.0731, 25.0732(a); Hidalgo County has five county courts at law and only one statutory probate court, *id.* § 25.1101; and Upshur County has only a constitutional county court, *id.* § 25.2321.  For Cameron County, the legislature established three county courts at law but has not established a statutory probate court.  The courts at law were granted the general jurisdiction of a county court and "concurrent with the county court, the probate jurisdiction provided by general law for county courts; and . . . concurrent jurisdiction with the district court in civil cases in which the amount in controversy exceeds $500 but does not exceed $1 million, excluding interest."  *Id.* §§ 25.0331, 25.0332(a)  When compared to the courts established for the counties discussed above, and the jurisdiction given to those courts, it appears clear that the Texas legislature has not affirmatively chosen to establish a statutory probate court for Cameron County and that it declined to extend the jurisdiction of the county courts at law to cover civil cases where the amount in controversy exceeded $1 million.

In light of the preceding, this Court concludes that the Texas legislature did not intend for Cameron County Court at Law No. 1 to have jurisdiction over survival or wrongful death actions when the amount in controversy exceeds $1 million, that the legislature has not in any way effected, negated, or cast negative light on the Texas Supreme Court's statement regarding the lack of jurisdiction over survival and wrongful

death actions in county courts at law, and that the Texas Supreme Court, if faced with the question, would hold that Cameron County Court at Law No. 1 does not have probate jurisdiction over survival or wrongful death actions. Thus, although Cameron County Court at Law No. 1 is a "probate court," this Court concludes that its jurisdiction does not extend to cover survival or wrongful death actions when the amount in controversy exceeds $1 million. Therefore, this Court **HOLDS** that Cameron County Court at Law No. 1 did not have jurisdiction over the survival, wrongful death, or related actions in this case. Furthermore, the In-State Defendants could not have been improperly joined in the District Court on Defendants' proffered basis — that the pendency of an action against the In-State Defendants in County Court prevented the institution of a suit against them in District Court, because there was no validly pending case against the In-State Defendants.[6]

### B. Effect of Parties' Settlement Agreement

Defendants also contend that a settlement agreement exists between the parties, and that the effect of this agreement is to prohibit, through the application of res judicata or collateral estoppel, Plaintiffs from asserting their claims in this case. Dkt. No. 1, at 8–11.

Any settlement agreement which may exist in this case cannot, by itself, bar Plaintiffs' claims, because both the existence of a settlement and the terms of such an agreement, if one exists, are disputed. *See* Dkt. No. 1, Ex. C4 (F, G); Dkt. No. 6, at 5; Dkt. No. 6, Ex. C8–C12. Thus, for the alleged settlement agreement to be relevant to the question of whether this Court has jurisdiction over this case, it must be through the application of collateral estoppel or res judicata.

Application of either of these doctrines requires an earlier decision regarding the same issue by a court with jurisdiction of the matter. *See* Allen v. McCurry, 449 U.S. 90, 94 (1980); Tartt v. Nw. Cmty. Hosp., 453 F.3d 817, 822 (7th Cir. 2006). In this case,

---

[6]Because the Court holds that the County Court did not have jurisdiction, it will not consider Defendants' arguments related to Plaintiffs' non-suit and the filing of pleas in abatement. Dkt. No. 1, at 11–12.

the County Court did not have jurisdiction over this matter. *See supra* § III.A. Therefore, there is no decision by a prior court upon which to base a finding of collateral estoppel or res judicata.

Even if the County Court had jurisdiction, the existence of removal jurisdiction is determined at the time of removal. *See* 77 C.J.S. *Removal of Cases* § 5 (2006). At that time, on October 27, 2006, the County Court had not ruled on the In-State Defendants' Motion for Summary Judgment. *See* Dkt. No. 1; Dkt. No. 1, Ex. H, at 5; Dkt. No. 6, Ex. G, at 2. Therefore, this Court would have to evaluate its jurisdiction without regard to the County Court's decision pertaining to the existence of a settlement agreement.

Without a decision from another court on the merits of whether or not the parties had entered into a valid settlement agreement, there is nothing upon which to invoke the doctrines of res judicata or collateral estoppel.[7] *See McCurry*, 449 U.S. at 94; *Tartt*, 453 F.3d at 822. Therefore, this Court cannot conclude that such an agreement operates to prevent Plaintiffs' claims in this case through either of those doctrines.

In addition, even if the Court had grounds upon which to find collateral estoppel or res judicata, it would be inappropriate to do so. The invocation of either of these doctrines would operate as a decision on the merits of the case. *See McCurry*, 449 U.S. at 94. This Court must determine that it has jurisdiction prior to rendering any decision on the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Thus, this Court may not hold that Plaintiffs' claims are barred by res judicata or collateral estoppel until after it has found a basis upon which to exercise jurisdiction over the case.[8]

_____

[7]The County Court ruled on the Motion for Summary Judgment on November 15, 2006. Dkt. No. 6, Exs. F, G. However, this ruling was not made until after removal was effected, and therefore cannot provide the grounds upon which to rest a finding of collateral estoppel or res judicata as of the time of removal.

[8]Of course, the Court could determine that res judicata or collateral estoppel is appropriate if that determination was necessary to establish the Court's jurisdiction. *See McCurry*, 449 U.S. at 94; *Steel Co.*, 523 U.S. at 94. For example, if a finding of res judicata or collateral estoppel would operate to bar only the claims against the In-State

### C. Limitations on Damages Awards

Defendants also argue that the statutory limitations placed on damages for "a wrongful death or survival action on a health care liability claim" and the "one satisfaction rule" operate to bar the claims against them. Dkt. No. 1, at 8–9, 12–13. Plaintiffs counter that breach of contract and declaratory judgment actions are not subject to these limitations and/or that this case falls within an exception for pharmacists contained within the relevant statute. Dkt. No. 6, at 12–23.

It is not clear from the record whether or not the statutory limitations contained in Texas Civil Practice and Remedies Code § 74.303 apply in this case. The statutory limitations apply to any case involving wrongful death or survival claims based on a health care liability claim, "regardless of . . . the number of separate causes of action on which the claim is based." TEX. CIV. PRAC. & REM. CODE ANN. § 74.303 (Vernon 2006). A "health care liability claim" includes a cause of action against a "health care provider . . . for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." *Id.* § 74.001(a)(13). A pharmacist is a "health care provider," as is the owner or affiliate of a pharmacist. *Id.* § 74.001(a)(12)(A)(iv), (a)(12)(B)(i). A "pharmacist" is defined as a person who "performs those activities limited to the dispensing of prescription medicines which result in health care liability claims." *Id.* § 74.001(a)(22). Finally, when

---

Defendants, but not Cardinal Health, Inc. or Cardinal Health Distribution, Inc., then the Court could make this finding, because it would establish improper joinder of the In-State Defendants and would provide the Court with subject matter jurisdiction. In this case, however, Defendants argue that res judicata or collateral estoppel would not apply solely to the In-State Defendants, because, as Defendants point out, the purported settlement agreement includes "Cardinal Health and its employees, agents, *and affiliates.*" Dkt. No. 1, at 8; *see also* Dkt. No. 6, Ex. G, at 3. Thus, Defendants' contention that the settlement agreement includes its affiliates negates their argument that res judicata or collateral estoppel would apply only to the claims against the In-State Defendants.

discussing the actions of a pharmacist, "dispensing" includes "compounding,"[9] and "compounding means the preparation, mixing, assembling, packaging, or labeling of a drug or device: (A) as the result of a practitioner's prescription drug order based on the practitioner-patient-pharmacist relationship in the course of professional practice; [or] (B) for administration to a patient by a practitioner as the result of a practitioner's initiative based on the practitioner-patient-pharmacist relationship to the course of professional practice."[10]  TEX. OCC. COD ANN. § 551.003(9)(A), (9)(B), (16), (23) (Vernon 2006).

Here, Plaintiffs assert survival and wrongful death claims, as well as declaratory judgment, breach of contract, gross negligence, and strict liability actions. Dkt. No. 1, Ex. C3.  Moreover, Plaintiffs' breach of contract and declaratory judgment claims are based upon underlying claims for survival and wrongful death.[11]  Id. at 17–24. Defendants Oyediran and Alfaro prepared, mixed, assembled, packaged, and/or labeled a drug as a result of a practitioner's prescription drug order and for administration to a patient by a practitioner.  Id. at 6–7.  Therefore, they were "dispensing" drugs within the meaning of the limitations statute.  TEX. OCC. CODE ANN.

---

[9]"Manufacturing," on the other hand, does not include "compounding."  TEX. OCC. CODE ANN. § 551.003(23) (Vernon 2006).

[10]The definition of "Manufacturer" in Texas Civil Practice and Remedies Code § 82.001, related to products liability claims, includes compounding or assembling. TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(4) (Vernon 2006).  Nonetheless, the definition of "Manufacturing" which applies to pharmacists specifically excludes compounding.  TEX. OCC. CODE ANN. § 551.003(23) (Vernon 2006).  This latter definition of manufacturing applies to this case.

[11]Although Plaintiffs assert more claims than just those for survival and wrongful death, those claims do not effect the operation of Texas Civil Practice and Remedies Code § 74.303.  Health care liability claims include claims sounding "in tort or contract." TEX. CIV. PRAC. & REM. CODE ANN. § 74.303(a) (Vernon 2006) (emphasis added).  The statutory limitation on damages is imposed "regardless of . . . the number of separate causes of action on which the claim is based."  Id.  Thus, because Plaintiffs' case is based on a health care liability claim and they assert survival and wrongful death claims, the additional claims Plaintiffs assert do not remove the case from the purview of the statutory limitation.

§551.003(9), (16) (Vernon 2006).  Furthermore, if Oyediran was licensed under Chapter 551 of the Occupations Code, he is a "pharmacist," and he, Defendant Alfaro, and Cardinal Health 109 are "health care providers."  TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A)(iv), (a)(12)(B)(i), (a)(12)(B)(ii), (a)(22).  Thus, Plaintiffs' claims, which are based on alleged defects in the professional services rendered by Oyediran and Alfaro in the treatment of Alyssa leading to her death, are health care liability claims. However, the Court has no information related to the status of any licenses held by Cardinal Health 109 or Defendant Oyediran, and the Court cannot determine whether or not the statutory limitation on damages applies.  Because the Court cannot determine whether or not the statutory limitation applies, the Court cannot conclude that the In-State Defendants were improperly joined on this basis.

Furthermore, this basis for finding improper joinder suffers from the same problem as Defendants' res judicata and collateral estoppel argument: a prohibition against Plaintiffs' claims resulting from the statutory limitation and the one satisfaction rule would operate as an adjudication of the merits of the case.  *See* Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 390 (Tex. 2000); El Paso Natural Gas Co. v. Berryman, 858 S.W.2d 362, 364 (Tex. 1993); *In re* Frank A. Smith Sales, Inc., 32 S.W.3d 871, 874 (Tex. App. 2000).  To hold that Plaintiffs' claims are barred by the conjunction of these two doctrines, the Court would have to hold that the settlement agreement is valid and enforceable.  This issue, however, had not been determined by any court at the time of removal.  Therefore, it would be improper for this Court to make the necessary findings to apply these doctrines to establish jurisdiction.

## D. Failure to Make Allegations of Selling or Manufacturing

As their final basis for establishing improper joinder, Defendants argue that Plaintiffs failed to allege that the In-State Defendants were involved in selling or manufacturing the drugs administered to Alyssa, and that they are therefore not proper subjects of a products liability claim.  Dkt. No. 1, at 13–14.

This argument also fails.  Regardless of whether Plaintiffs sufficiently plead products liability claims against the In-State Defendants, there are other claims pending

against those Defendants.  Therefore, the In-State Defendants were not improperly joined even if the products liability claims are not applicable to them.

### E. The Doctrine of Common Defense

As an alternative basis for its decision, the Court holds that the doctrine of common defense precludes the Court from taking jurisdiction of this case.  According to that doctrine, "[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made."  Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 571, 573, 574–75, 576 (5th Cir. 2004); see also McDonal v. Abbott Labs., 408 F.3d 177, 183–84 (5th Cir. 2005).  In other words, a defendant must establish that the in-state defendants were actually improperly joined, not that the whole case is without merit.  McDonal, 408 F.3d at 183–84; Smallwood, 385 F.3d at 571, 574.  In this case, all of Defendants' arguments apply with equal force to the In-State Defendants, Cardinal Health, Inc. and Cardinal Health Distribution, Inc.  Therefore, Defendants' real argument is that the District Court case should be dismissed altogether, not that the In-State Defendants were improperly joined.  Thus, this Court lacks jurisdiction over this case and must remand it to the state district court.  Smallwood, 385 F.3d at 576.

### IV.   Attorney's Fees and Costs

In their Motion to Remand, Plaintiffs seek "their costs, expenses and attorneys fees" associated with the removal of this case.  The Court, however, finds that granting this request would be improper and therefore declines to make such an award.

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  In the Fifth Circuit, the remanding court must consider "whether the defendant had objectively reasonable grounds to believe the removal was legally proper."  Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 293 (5th Cir. 2000); see also Vargas v. State Farm Lloyds, 216 F.Supp.2d 643, 651 (S.D. Tex. 2002).  In this case,

the *Tovias* case created a reasonable basis for Defendants to believe that the County Court had jurisdiction over the case.  Moreover, if the County Court had jurisdiction, even though removal still would have been improper, there would have at least been a reasonable basis for Defendants' belief that removal was appropriate.  Therefore, this Court will not award attorney's fees, costs, or expenses to Plaintiffs.

## V.    Conclusion

Based on the foregoing, the Court **HOLDS** that it lacks subject matter jurisdiction over this case.  Therefore, the Court **GRANTS** Plaintiffs' Motion to Remand.  Dkt. No. 6. Furthermore, the Court **DISMISSES** as moot Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B) [sic], Dkt. No. 4, and Defendants' Request for Entry of Orders on Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B) [sic], Dkt. No. 10.  Nonetheless, the Court **DENIES** Plaintiffs' request for attorney's fees and costs.  Finally, the Court **ORDERS** this case to be remanded to the 404th Judicial District Court of Cameron County, Texas.

DONE at Brownsville, Texas, this 5 day of January, 2007.

Hilda G. Tagle
United States District Judge

-24-